PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HEYDEN, | ) | |
| | ) | CASE NO.  5:13CV1706 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MORTON SALT, INC., *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 27] |

Pending is Defendants Morton Salt, Inc. and Alex Isaiah's Motion for Summary

Judgment (ECF No. 27).  The Court has been advised, having reviewed the record, the parties'

briefs, and the applicable law.  For the reasons set forth below, Defendants' motion is granted.

### I.  Stipulated Facts

The stipulated facts[1] are as follows:

1.  Defendant Morton Salt, Inc. ("Morton Salt") is a provider of commercial and

residential salt products.  Morton Salt operates a facility located at 151 Industrial Avenue,

Rittman, Ohio (the "Rittman facility").

2.  The Rittman facility is a union shop, and the terms and conditions of bargaining unit

employees like Plaintiff Robert Heyden are governed by a Collective Bargaining Agreement

("CBA") between Morton Salt – Rittman and the United Steelworkers, AFL-CIO-CLC, Local

Union 12081 (the "Union").

---

[1] *See* Joint Statement of Undisputed Facts (ECF No. 29).

(5:13CV1706)

3.  Morton Salt has employed Plaintiff at the Rittman facility since September 1999, most recently as a Water Softener Bagger.

4.  Defendant Alex Isaiah is a Rotational Supervisor at the Rittman facility.

5.  On February 27, 2013, Isaiah reported that he had observed Plaintiff riding a manlift[2] from one floor up to another, facing outward, away from the conveyor belt and hand holds. Plaintiff denies having ridden the manlift in the manner observed by Isaiah.

6.  On March 18, 2013, Morton Salt placed Plaintiff on an unpaid suspension until a final decision concerning his continued employment could be made.

7.  On March 26, 2013, Morton Salt management met with Plaintiff and his Union President and issued a Last Chance Agreement ("LCA") (ECF No. 28-10) to him to be in effect for three years.  Plaintiff also was given a one-month suspension as part of the LCA.

8.  On March 22, 2013, while on suspension, Plaintiff placed a call to Morton Salt's compliance hotline to complain about Isaiah.

9.  In April 2013, upon Plaintiff's return to work following his unpaid suspension, he requested and was granted intermittent leave pursuant to the Family Medical Leave Act ("FMLA").

10.  Plaintiff has been granted all the intermittent leave he has requested.

---

[2] A "manlift" is "[a] device consisting of a power-driven endless belt moving in one direction only, and provided with steps or platforms and handholds attached to it for the transportation of personnel from floor to floor."  29 C.F.R. § 1910.68(a)(5).

(5:13CV1706)

## II.  Background

Plaintiff, a Caucasian male, is a current employee of Morton Salt.  Plaintiff's Affidavit (ECF No. 31) at PageID #: 509, ¶2.  He challenges Morton Salt's issuance of the one-month suspension and LCA following his second Cardinal Rule violation for performing high work without taking adequate fall protection measures.

Isaiah is the only African American supervisor at the Rittman facility.  Affidavit of Mark Mollohan (ECF No. 31) at PageID #: 507, ¶¶ 6-7; ECF No. 31 at PageID #: 509-10, ¶¶ 6-7.  On October 29, 2012, Isaiah came upon Plaintiff and another bargaining unit employee in the break room after the time that their breaks should have ended.  Isaiah reminded the employees that their breaks were over and directed them back to work.  While the other employee acquiesced in returning to work, Plaintiff became irate, swore at Isaiah, and slammed his hand or cell phone on the table.  Plaintiff left work shortly thereafter, indicating that he needed to go home before he said or did something that he would regret.  Plaintiff's Deposition Transcript (ECF No. 28) at PageID #: 342-43, Pgs. 61-65; ECF No. 31 at PageID #: 510, ¶ 12; Isaiah Affidavit (ECF No. 27-3) at PageID #: 210, ¶ 2.  Isaiah and Production Supervisor Chris Brown reported these events to Regional Human Resources Manager Alan Longstreth.  Longstreth Affidavit (ECF No. 27-2) at PageID #: 191, at ¶ 4.

The following day, Longstreth met with Plaintiff and his union steward to discuss Heyden's overreaction to Isaiah's instruction.  During this conversation, Plaintiff acknowledged that he had been experiencing stress, that he felt angry all the time, and that he had been having a difficult time keeping his emotions in check.  ECF No. 27-2 at PageID #: 192, ¶ 5; ECF No. 28 at PageID #: 344, Pgs. 68-69.  Because Longstreth had a genuine concern about Plaintiff's health

3

(5:13CV1706)

and safety as well as the safety of other plant employees, he directed Heyden to obtain a note from his healthcare provider indicating whether Plaintiff was capable of safely performing his job responsibilities and whether any accommodation needed to be made to assist him in that regard.  ECF No. 27-2 at PageID #: 192, ¶ 6.

A few days later, Plaintiff provided a note, dated November 5, 2012 (ECF No. 28-7), from his family physician, Raymond G. Mason, M.D., indicating that he could safely perform his job.  The note said nothing about an alleged medical condition and indicated that Plaintiff had "no pattern of disturbance" and "no present anxiety or excessive stress."  Dr. Mason further opined that "no further evaluation or counseling [is] needed" and that Plaintiff was to "follow up as needed if stress recurs."  The "Medications" section of the note does not show that Plaintiff was prescribed any medications at that time.

Cardinal Rules (ECF No. 27-2 at PageID #: 199) are significant plant rules, the violation of which can cause an employee to be terminated for a first offense.  ECF No. 28 at PageID #: 341, Pgs. 56-57; ECF No. 27-2 at PageID #: 192, ¶ 8.  Employees at the Rittman facility receive training on the Cardinal Rules at least one time per year.  One such Cardinal Rule has to do with high work spaces.  That rule prohibits high work from being performed "until adequate fall protection measures are made."  ECF No. 27-2 at PageID #: 199.

4

(5:13CV1706)

Defendants contend Plaintiff violated this Cardinal Rule on February 27, 2013.[3]  On that day, Isaiah observed Plaintiff riding a manlift from one floor up to another, facing outward, away from the conveyor belt and hand holds, with his hands in his pockets.  To properly guard against falling from the manlift, employees are required to face the conveyor belt gripping the handhold with both hands.  Isaiah called to Plaintiff to turn around, and he complied.  ECF No. 27-3 at PageID #: 210, ¶ 4.  As this was a blatant rule violation, Isaiah immediately reported the incident to Longstreth and Dry End Production Manager John Slaydon and met with Plaintiff and his union steward for further discussion.

During this meeting, Plaintiff denied having ridden the manlift in the manner observed by Isaiah.  He instead claimed that he turned around only when Isaiah called out to him.  ECF No. 27-3 at PageID #: 211, ¶ 5, ECF No. 27-2 at PageID #: 193, ¶ 9; 200-201.  Plaintiff attested:

> 26.  That, on February 27, 2013, I was correctly riding the man-lift by facing the belt with both of my hands on the hand-hold when Alex Isaiah yelled out my name from behind and below me.
>
> 27.  That, while correctly riding the man-lift [ ] on February 27, 2013, I partially turned around and looked over my shoulder, removed one hand from the hand-hold but still maintained the required 3-point contact (two feet and one hand) with the man-lift, and responded by saying "what" to Alex Isaiah.

---

[3]  This marked Plaintiff's second Cardinal Rule violation related to high work areas.  In September 2009, Plaintiff was observed performing elevated work without using adequate fall protection.  While the 2009 incident also independently warranted termination, Morton Salt took into account Plaintiff's length of service, his past work record, and his honesty during the investigation and instead issued him a seventeen-day unpaid suspension.  ECF No. 28 at PageID #: 341-42, Pgs. 55-61; Erwin Letter (ECF No. 28-6) ("[I]f [Plaintiff] violates a 'Cardinal Rule' again, his employment with Morton Salt will be terminated immediately.").

(5:13CV1706)

28.     That, despite calling out my name from below and behind me while I was on the man-lift, when I responded to him Alex Isaiah told me, "you better turn around and grab ahold of that goddamn thing."

29.     That Alex Isaiah incorrectly reported my action as being a cardinal rule safety violation and falsely indicated that I was riding the man-lift facing backwards away from the belt with both of my hands in my pocket[s]. There were no [eyewitnesses] other than Alex Isaiah and myself.

ECF No. 31 at PageID #: 512.

Thereafter, Slaydon interviewed Isaiah and James Vannoy, a bargaining unit employee who was standing next to Isaiah when the incident occurred.  Vannoy claimed not to have seen anything and therefore could not confirm or deny the incident.  ECF No. 27-2 at PageID #: 193, ¶ 9.  Based upon the investigation, Morton Salt determined that the incident likely had occurred. To reach this finding, Morton Salt made a credibility determination in favor of Isaiah for a number of reasons.  First, historically, Isaiah had been an honest and trustworthy employee. Second, he had no reason to fabricate the story, particularly since he would have faced serious consequences for such a fabrication.  Plaintiff, on the other hand, had incentive to lie to save his job.  Third, Isaiah's story made more sense, as it was inconceivable that an employee would turn all the way around on the manlift upon hearing his name being called out.  ECF No. 27-2 at PageID #: , ¶ 10.

Morton Salt runs a Safety Incentive Program that rewards employees who notify the company of any potential safety violations.  On March 8, 2013, after Isaiah had corrected Plaintiff on the manlift, Plaintiff submitted a notice of safety violation claiming that Isaiah had ridden the manlift with a clip board tucked in his arms (while holding the rail with both hands). ECF No. 31 at PageID #: 513, ¶ 32.

6

(5:13CV1706)

On March 18, 2013, Slaydon, Isaiah, and Mill Supervisor Jim Dearth met with Plaintiff and his Union President, Edgar Carter, to discuss the February 27, 2013 incident.   At that meeting, Plaintiff again was given an opportunity to share his version of events.  Slaydon thereafter informed Plaintiff that he was being placed on an unpaid suspension until a final decision concerning his continued employment could be made.  ECF No. 28 at PageID #: 346-47, Pgs. 76-79.

Because of the gravity of the offense and the fact that this was Plaintiff's second Cardinal Rule violation, Morton Salt concluded that termination of employment was appropriate under the circumstances.  ECF No. 27-2 at PageID #: 193, ¶ 11.  Following extensive negotiations with the Union, however, Morton Salt ultimately decided to retain Plaintiff provided that he enter into the LCA to remain in effect for three years and accept an unpaid one-month suspension.  ECF No. 28 at PageID #: 350-51, Pgs. 92-97.

On March 22, 2013, while on suspension, Plaintiff placed a call to EthicsPoint, Morton Salt's compliance hotline, to complain about Isaiah.  ECF No. 27-2 at PageID #: 194, ¶ 14. Plaintiff reported that Isaiah "bullies and intimidates employees" and "yells at employees and lies about employees to protect himself about making wrong decisions."  EthicsPoint Report #2 (ECF No. 27-2 at PageID #: 202-209) at Page ID #: 203.  He also indicated that he believed Isaiah was retaliating against him due to a previous incident involving Craig Lindsey.  ECF No. 27-2 at PageID #: 203; ECF No. 31 at PageID #: 510, ¶ 10.[4]  At the direction of in-house counsel,

---

[4] Around August 2012, Isaiah approached Plaintiff to act as a union steward during a meeting with bargaining unit employee Craig Lindsey, regarding Lindsey's failure to follow Isaiah's work instructions.  After participating in this meeting and

(continued...)

(5:13CV1706)

Human Resources Manager Charles Justice investigated the complaint and found no evidence of discriminatory or retaliatory conduct on the part of Isaiah.  ECF No. 27-2 at PageID #: 194, ¶¶ 15-16; ECF No. 28 at PageID #: 334, Pgs. 27-28.  To the contrary, Justice found that Plaintiff seemed primarily concerned about his having been suspended.  As this issue was a contractual issue, Justice directed Plaintiff to contact his union representative for further handling.  ECF No. 27-2 at PageID #: 194, ¶ 16.

In addition to the compliance hotline complaint, Plaintiff claims that he complained about Isaiah to Foreman Aaron Strong, Dearth, and Longstreth as early as September 2012.  ECF No. 28 at PageID #: 339, Pgs. 46-48.  Plaintiff's complaints to these individuals in Morton Salt management had nothing to do with race or any other legally protected trait or characteristic, but rather concerned Plaintiff's feelings of mistreatment by Isaiah.  ECF No. 28 at PageID #: 339-40, Pgs. 48-50.  Plaintiff complained that Isaiah followed him around, took notes on a notepad, instructed him to perform tasks inconsistent with his primary job duties, directed him to work prior to the end of a scheduled break, and reminded him to wear his beard net.  ECF No. 31 at PageID #: 511, ¶¶ 12, 18, and 20; ECF No. 28 at PageID #: 342-44, Pgs. 61-66.  Longstreth met with Isaiah on more than one occasion to ensure that he was not singling out Plaintiff for any reason.  ECF No. 27-2 at PageID #: 195, ¶ 17.  Longstreth also encouraged Plaintiff to avail himself of the grievance procedure if he believed he was being treated unfairly, something

---

[4](...continued)
talking with other employees present during the incident, Plaintiff determined that Lindsey had good reason to disregard Isaiah's instructions and he successfully urged Isaiah to not issue disciplinary action to Lindsey.  ECF No. 28 at PageID #: 336, Pgs. 34-36.

(5:13CV1706)

Plaintiff  declined to do.  ECF No. 27-2 at PageID #: 195, ¶ 17; ECF No. 28 at PageID #: 340,

Pgs. 50-51.

In April 2013, upon Plaintiff's return to work following his unpaid suspension, he

requested and was granted intermittent leave pursuant to the FMLA.  On June 4, 2013, after

having received the FMLA paperwork from Morton Salt's third-party administrator, Longstreth

met with Plaintiff to discuss his leave requirements in further detail.  During this meeting,

Plaintiff informed Longstreth that he had been diagnosed with "personal anxiety, work related."[5]

ECF No. 28 at PageID #: 353-54, Pgs. 102-06.  This was the first time that anyone in Morton Salt

management had been informed of Plaintiff's medical condition.  ECF No. 28 at PageID #: 353,

Pg. 105.

In July 2013, Plaintiff filed a six-count Complaint (ECF No. 1-2 at PageID #: 9-15)

against Morton Salt and Isaiah in the Wayne County, Ohio Court of Common Pleas, being Case

No. 13-CV-0378.  The Complaint (ECF No. 1-2 at PageID #: 9-15) alleges claims of

discrimination on the basis of his race (Caucasian) and alleged disability, hostile work

environment, and retaliation pursuant to Ohio Rev. Code Ch. 4112, as well as breach of the CBA

and intentional infliction of emotional distress ("IIED").  Defendants removed the case to this

Court on August 7, 2013, on the basis of federal question jurisdiction.  *See* Defendants' Notice of

Removal (ECF No. 1 at PageID #: 3, ¶ 2(g)); Civil Cover Sheet (ECF No. 1-1 at PageID #: 6, §

II).

_____

[5]  Plaintiff was first diagnosed with anxiety and depression on March 1, 2013 –
two days *after* the manlift incident.  He was prescribed medication at that time.  ECF No.
28 at PageID #: 353, Pg. 104.

(5:13CV1706)

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

10

(5:13CV1706)

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

## IV. Analysis

### A. Breach of Collective Bargaining Agreement and Intentional Infliction of Emotional Distress

Plaintiff offers no opposition to Defendants' argument that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts his state law claims of breach of the CBA (Count IV) and IIED (Count I). *See* Memorandum in Opposition (ECF No. 31).[6] Therefore, Defendants' Motion for Summary Judgment (ECF No. 27) with respect to these claims is granted for the reasons articulated by Defendants. *See* Memorandum in Support (ECF No. 27-1) at PageID #:175-79.

---

[6] The pre-filing written exchange required by ¶ 15 of the Case Management Plan (ECF No. 15) and the Order (ECF No. 22) entered on April 23, 2014, should have obviated the need for the Court's attention to be drawn to unopposed argument.

(5:13CV1706)

**B.**      **Supplemental Jurisdiction Over the Remaining State Law Claims pursuant to 28 U.S.C. § 1367(a)**

The Court may exercise supplemental jurisdiction over the remaining state law claims

pursuant to 28 U.S.C. § 1367(a) only if the "interests of judicial economy and the avoidance of

multiplicity of litigation" outweigh the need to avoid "needlessly deciding state law issues."

*Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (quoting *Landefeld v.

Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).  Generally, when "the federal

claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* at 210

(internal quotation marks omitted).  This case has been on the Court's docket for over 19 months;

the Court conducted a Case Management Conference and Status Conference; discovery is

complete; the Court has already ruled on Plaintiff's Motion to Remand to State Court (ECF No.

6); and the parties have fully briefed Defendants' Motion for Summary Judgment (ECF No. 27).

As a result, the Court is "familiar with the facts of the case and [has] already . . . invested

significant time in the litigation." *Id.* at 211.  Balancing the appropriate interests, the Court finds

that judicial economy favors retaining jurisdiction over Plaintiff's remaining state claw claims.

Therefore, the Court will address the retaliation, disparate treatment, and hostile work

environment claims at this time.

**C.**      **Retaliation**

Under Ohio Rev. Code § 4112.02(I), it is "an unlawful discriminatory practice . . . [f]or

any person to discriminate in any manner against any other person because that person has

(5:13CV1706)

opposed any unlawful discriminatory practice defined in this section. . . ."[7]  To establish a case of

retaliation, a claimant must prove that (1) he engaged in a protected activity, (2) the defending

party was aware that the claimant had engaged in that activity, (3) the defending party took an

adverse employment action against the employee, and (4) there is a causal connection between

the protected activity and adverse action.  *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 327

(2007).  "If a complainant establishes a prima facie case, the burden then shifts to the employer

to 'articulate some legitimate, nondiscriminatory reason' for its actions."  *Id.* (quoting *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "If the employer satisfies this burden, the

burden shifts back to the complainant to demonstrate 'that the proffered reason was not the true

reason for the employment decision.'"  *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 256 (1981)).

Plaintiff's claim under the anti-retaliatory provision of § 4112.02(I) (Count V) fails for

three reasons.  First, there is a lack of protected activity.  Plaintiff argues that he engaged in

protected activity on March 8, 2013 when he filed a written report with Morton Salt of a safety

violation committed by Isaiah that he observed that day.  ECF No. 31 at PageID #: 502.

However, providing notice of an alleged safety violation, without more, would not trigger the

protections of § 4112.02(I), as the report did not have anything to do with Plaintiff's race or any

other protected trait or characteristic.  *See Balding-Margolis v. Cleveland Arcade*, 352 Fed.Appx.

35, 45 (2009).  Vague safety complaints that do not reference unlawful discriminatory conduct

---

[7]  "Federal law provides the applicable analysis for reviewing retaliation claims"
in Ohio.  *Baker v. Buschman Co.*, 127 Ohio App.3d 561, 568 (1998) (quotation omitted).

(5:13CV1706)

simply do not amount to protected activity.  *Willoughby v. Allstate Ins. Co.*, 104 Fed.Appx. 528, 531 (6th Cir. 2004).

Second, Plaintiff cannot draw a causal relationship between the activity on March 8, 2013 (Plaintiff's submission of a report complaining about Isaiah) and the challenged adverse actions, particularly because the manlift event (the basis for the challenged discipline) occurred on February 27, 2013, and the alleged protected activity occurred nine (9) days later.  "[I]f the alleged retaliatory conduct occurred *before* the employee engaged in protected activity, the two events cannot be causally connected."  *Manley v. DeKalb County, Georgia*, 587 Fed.Appx. 507, 512 (11th Cir. 2014) (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006)).  In addition, there is no evidence that any of the decision makers knew about the March 8, 2013 report of safety violation at the time they made the decisions regarding the one-month suspension and LCA.

Finally, Plaintiff lacks evidence to carry his burden of showing by a preponderance of the evidence that Defendant's reasons were a mere pretext for retaliation.  He has not put forth any evidence to rebut Defendants' legitimate non-retaliatory reasons for taking the challenged employment actions.  In this regard, Plaintiff was observed riding a manlift from one floor up to another, facing outward, away from the conveyor belt and hand holds.  ECF No. 29 at ¶ 5.  This was Plaintiff's second Cardinal Rule violation for performing high work without adequate protection.  As Plaintiff readily acknowledged at his deposition, such a violation warrants termination of employment for a first offense.  ECF No. 28 at PageID #: 350, Pg. 92.  Plaintiff could have been terminated for each of the two Cardinal Rule violations, and Morton Salt instead

14

(5:13CV1706)

chose to retain him in both instances. Rather than terminate Plaintiff for his second offense, Morton Salt and the Union agreed upon a lesser consequence that allowed him to retain his job.

In an effort to overcome this compelling evidence, Plaintiff has denied riding the manlift in an improper manner (ECF No. 31 at PageID #: 512, ¶¶ 26-29), and has submitted affidavit testimony of a co-worker that Isaiah is known to be untruthful (ECF No. 31 at PageID #: 507, ¶ 8). This evidence falls short of establishing pretext because Isaiah—a low level rotational supervisor—did not play any role in determining the level of discipline appropriate for Plaintiff. ECF No. 27-3 at PageID #: 211, ¶ 6; Isaiah's Deposition Transcript (ECF No. 32) at PageID #: 545-49. In addition, aside from Plaintiff's conclusory allegations, there is no evidence that Isaiah harbored race or disability-based animus toward him. In his deposition, Isaiah flatly denied having any motive to cause harm to Plaintiff. ECF No. 32 at PageID #: 542.

Plaintiff's second Cardinal Rule violation for performing high work without taking adequate fall protection measures is a legitimate, non-retaliatory reason for his one-month suspension as part of the LCA. Morton Salt conducted a thorough and independent investigation including interviews of Plaintiff, Isaiah, and Vannoy (an alleged eyewitness who claimed not to have seen anything). Ultimately, and well within Morton Salt's rights, Longstreth and Slaydon found that the violation more likely than not had occurred and took action on the basis of that finding. ECF No. 27-2 at PageID #: 193, ¶ 10. Under these circumstances, Plaintiff should not be permitted to second-guess Morton Salt's good faith business judgment as a means of showing pretext. See *Goodsite v. Norfolk Southern Ry. Co.*, 573 Fed.Appx. 572, 585-87 (6th Cir. 2014)

(5:13CV1706)

(regarding "cat's paw" theory of liability);[8] *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707-709 (6th Cir. 2006) (regarding the honest belief doctrine); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (court does not "act [ ] as a super personnel department, overseeing and second guessing employers' business decisions") (internal quotation marks omitted); *Morris v. Department of Veterans Affairs*, No. 14-3512, 2015 WL 263979, at *4 (6th Cir. Jan. 21, 2015) ("plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [ ] intentionally [retaliated] against [her]") (alteration in original).

### D. Disparate Treatment Race and Disability Discrimination

#### 1. Race Discrimination

Count II alleges a claim of discrimination on the basis of Plaintiff's race (Caucasian). ECF No. 1-2 at PageID #: 11-12.  Generally, a *prima facie* case of racial discrimination under *McDonnell Douglas* requires a plaintiff to establish as follows:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position he held; and (4) the position remained open or was filled by a person not of the protected class. *McDonnell Douglas*, 411 U.S. at 802.  In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show that he was treated differently from similarly-situated individuals.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Additionally, in a case of reverse race discrimination, the first element is modified to require that the plaintiff establish that the defendant is the unusual employer who discriminates

---

[8]  A theory that is not explicitly argued by Plaintiff.

(5:13CV1706)

against the majority. *Lennon v. Cuyahoga Cty. Juvenile Court*, No. 86651, 2006 WL 1428920, at *2 (Ohio App. 8th Dist. May 25, 2006) (citing *Carney v. Cleveland Heights-University Heights City School Dist.*, 143 Ohio App.3d 415, 428 (2001)).

If a plaintiff is able to establish a *prima facie* case of discrimination under *McDonnell Douglas*, then a presumption is created that the employer unlawfully discriminated against the employee, and the burden shifts to the defendant to produce evidence that its actions regarding the plaintiff were based on legitimate nondiscriminatory reasons. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). The burden, thereafter, switches to the plaintiff, who must show that defendant's stated justification is, in fact, merely a pretext for unlawful discrimination. The ultimate burden of persuasion remains at all times with the plaintiff. *Id.* at 256.

Like Plaintiff's retaliation claim, his disparate treatment race discrimination claim fails for lack of pretext evidence. An employer's disciplinary actions are not pretextual when the employer reasonably relies on particularized facts in taking adverse action against an employee, and the employer has an honest belief based on those facts. *Wright*, 455 F.3d at 708. The *Wright* court made clear that an employer's investigation need not be perfect in order to support an "honest belief" that termination was appropriate. In *Wright*, the court reiterated that courts should not "micro-manage" the investigation process, and it is not necessary that "the decisional process used by the employer be optimal or that it left no stone unturned." *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)); *Bass v. White Castle System, Inc.*, No. 1:09CV2516, 2014 WL 5516473, at *8-9 (N.D. Ohio Oct. 31,2014) (Pearson, J.). Similarly, a plaintiff cannot establish pretext by simply denying that he committed the conduct alleged or by

17

(5:13CV1706)

second-guessing the employer's business decision. *See Schoenberg v. Fifth Third Bank*, No. 1:07-cv-276, 2008 WL 4758674, at *10 (S.D. Ohio Oct. 28, 2008); *Canady v. Rekau & Rekau, Inc.*, No. 09AP-32, 2009 WL 3021764, at *6 (Ohio App. 10th Dist. Sept. 22, 2009) (Plaintiff "cannot satisfy this burden [to show pretext] by merely denying the existence of a legitimate, nondiscriminatory reason when, in fact, the record contains such a reason.").

### 2. Disability Discrimination

Plaintiff's claim for disability discrimination (disparate treatment) (Count VI) alleges that Defendants violated Ohio Rev. Code § 4112.99. ECF No. 1-2 at PageID #: 13. The Ohio Supreme Court has observed that "R.C. 4112 .99 functions as a gap-filling provision, establishing civil liability for violations of rights for which no other provision for civil liability has been made." *Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 110 (2009) (citation omitted.). Thus, "[a]n aggrieved party may, pursuant to R.C. 4112.99, institute an independent civil action to seek redress for discrimination on the basis of physical disability." *Elek v. Huntington Natl. Bank*, 60 Ohio St.3d 135 (1991), paragraph one of the syllabus. The Ohio Supreme Court has also observed that R.C. 4112.99 provides the sole civil remedy to redress discrimination based on disability under R.C. Chapter 4112. "[N]o other section of R.C. Chapter 4112 confers upon an alleged victim of handicap[9] discrimination the right to pursue a civil action." *Meyer*, 122 Ohio St.3d at 108.

A *prima facie* case of disparate treatment discrimination consists of three essential elements: (1) the claimant had a disability, (2) the defendant took an adverse employment action,

---

[9] In 1999, Ohio Rev. Code § 4112.02(A) was modified to substitute the word "disability" for "handicap." 1999 Am.H.B. No. 264.

(5:13CV1706)

at least in part, because the plaintiff had the disability, and (3) the claimant, while having a

disability, could safely and substantially perform the essential functions of the job in question.

*Tibbs v. Ernst Enterprises., Inc.*, No. 22850, 2009 WL 1813776, at *3 (Ohio App. 2nd Dist. June

19, 2009) (citing *Sheridan v. Jackson Twp. Div. Fire*, No. 08AP-771, 2009 WL 714081, at *1

(Ohio App. 10th Dist. March 19, 2009)).  Here, the issue is whether Plaintiff has been

discriminated against because of an alleged disability.  Plaintiff testified:

> Q.  Did anybody at Morton Salt discipline you or take any adverse action
> against you or do anything to damage you?
> A.  No.
> Q.  Because of your disability?
> A.  No, no.

ECF No. 28 at PageID #: 370, Pgs. 170-71.

Plaintiff argues that he submitted documentation to Morton Salt in early November 2012

which indicated a diagnosis of anxiety and depression.  ECF No. 31 at PageID #: 492.  The note,

dated November 5, 2012 (ECF No. 28-7), from his treating physician, Dr. Mason, however,

indicated that Plaintiff had "no pattern of disturbance" and "no present anxiety or excessive

stress."  Dr. Mason further opined that "no further evaluation or counseling [is] needed" and that

Plaintiff was to "follow up as needed if stress recurs."

The Court concludes Plaintiff has failed to establish a *prima facie* case of disability

discrimination.  Plaintiff was not diagnosed with a medical condition until two days after the

manlift incident (ECF No. 28 at PageID #: 353, Pg. 104), and he did not inform anyone at

Morton Salt of such condition until June 4, 2013—after he returned from his suspension (and

after he had entered the LCA) (ECF No. 28 at PageID #: 353, Pg. 105).  Clearly, Plaintiff cannot

establish that Morton Salt issued the challenged adverse employment actions based on an alleged

(5:13CV1706)

disability that it knew nothing about. *See Burns v. City of Columbus, Dept. of Public Safety, Div. of Police, 91 F.3d 836, 844 (6th Cir. 1996)* (affirming summary judgment to employer on disability discrimination claim where there was no evidence that the decision makers had any knowledge of plaintiff's disability); *Green v. Burton Rubber Processing, Inc., 30 Fed.Appx. 466, 470 (6th Cir. 2002)* (affirming summary judgment for defendant employer, and observing that "if an employer fires an employee because of the employee's unacceptable behavior, the fact that [the] behavior was precipitated by a mental illness does not present an issue under the [ADA]") (quoting *Palmer v. Cir. Court of Cook County, 117 F.3d 351, 352 (7th Cir. 1997)*); *Yarberry v. Gregg Appliances, Inc., No. 1:12-cv-611, 2014 WL 4639149, at *8-9 (S.D. Ohio Sept. 16, 2014)* (granting summary judgment in employer's favor where plaintiff was diagnosed with a mental condition after he engaged in the behavior resulting in his termination).

### E.    Hostile Work Environment

Plaintiff also alleges a hostile work environment claim based on his race and disability (Count III).  To state a claim for hostile work environment based on race or disability, Plaintiff must show:  (1) he was a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based upon being a member of the protected class; (4) the harassment unreasonably interfered with Plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged harassment and failed unreasonably to take prompt and appropriate corrective action.  *See Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir. 1999)*.[10]

---

[10]    In determining the essential elements of a hostile work environment claim

(continued...)

20

(5:13CV1706)

In the case at bar, § 4112.02(A) does not prohibit all verbal or physical harassment in the workplace but is directed at discrimination because of race or disability.  In Title VII actions, "it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'"  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Thus, the conduct in the instant case is not illegal just because it is uncomfortable, or inappropriate.  *Lewis-Smith v. Western Kentucky University*, --- F. Supp.3d ----, No. 1:12-CV-00014-JHM, 2015 WL 136131, at *11 (W.D.Ky. Jan. 9, 2015).

The Court finds that Plaintiff's hostile work environment claim is entirely without merit.  Other than the fact that Plaintiff (who is Caucasian) and Isaiah (who is African American) are of different races, there is no evidence tending to indicate that race or disability played any role in the dissension between the two men.  The only evidence offered in support of this claim is that Isaiah followed Plaintiff around, took notes on a notepad, instructed him to perform tasks inconsistent with his primary job duties, directed him to work prior to the end of a scheduled break, reminded him to wear his beard net, and reported the manlift incident to upper management.  Under the standard discussed above, even assuming Isaiah did all of these things, they simply do not make for a hostile work environment based on Plaintiff's race and/or his disability.  *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996) (holding that

---

[10](...continued)
brought under Ohio Rev.Code § 4112.02(A), Ohio courts have looked to federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  *See Delaney v. Skyline Lodge, Inc.*, 95 Ohio App.3d 264, 270 (1994); *Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-10 (1991).

(5:13CV1706)

the plaintiff's evidence of hostility and abusiveness in the workplace was not related to age-based animus but rather to a "simple clash of personalities").  Defendant is entitled to summary judgment on the hostile work environment claim.

### V.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff,

Defendants Morton Salt, Inc. and Alex Isaiah's Motion for Summary Judgment (ECF No. 27) is granted.  Judgment shall be entered in favor of Defendants.

The case is closed.


IT IS SO ORDERED.


  March 25, 2015                                          /s/ Benita Y. Pearson
Date                                                     Benita Y. Pearson
                                                         United States District Judge

22